# N. L. Ard v. C. H. Pratt.

1. Preëmption — *Contested Case — Appeal.* The officers of the land department are especially designated by law to receive, consider and pass upon proofs presented with respect to settlements upon the public lands, with a view to secure rights of preëmption; and, for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from one officer to another of the department, and perhaps, under special circumstances, to the president.

2. Facts Stated — *Duty of Pre-emptor.* Where a person comes to a United States local land office, intending to homestead one hundred and sixty acres of land, and makes his application and tenders the fees therefor, but is informed by the register that his land is situated within the granted limits of a railroad company, and that he can homestead only eighty acres, and, acting upon this advice, utterly abandons the intention of taking a homestead and makes a preëmption filing upon eighty acres of the land, he must subsequently show a compliance with the requirements of the preëmption law to prove up and make payment on the eighty acres.

3. Preëmption — *Filing, Canceled — Adverse Claimant.* Where a person having the qualifications of a preëmptor attempts to secure title to a tract of land under the preëmption law by filing thereon, and his

preëmption filing is subsequently canceled on account of his non-compliance with the provisions of the statute and the regulations of the United States land department concerning residence and improvements, he cannot afterward claim the land as a settler under the homestead law, if an adverse claimant has in the mean time intervened and obtained a legal right thereto.

*Error from Allen District Court.*

EJECTMENT.    The material facts are stated in the opinion.

*A. L. Allen,* for plaintiff in error; *William Lawrence,* of counsel.

*Hutchings & Keplinger,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by C. H. Pratt against N. L. Ard, to recover the possession of the west half of the southeast quarter of section 2, township 26, range 20, in Allen county. The case was tried at the June term, 1889, by the court without a jury. The trial court found for the plaintiff; and the defendant brings the case here. A patent for the land was issued on the 3d day of November, 1873, to the Missouri, Kansas & Texas Railroad Company. It is conceded that whatever title to the land passed by the patent to the railroad company is in Pratt, by virtue of a conveyance from the company to him. Ard claims an equitable title to the land, and possession thereof, under the provisions of the land laws of the United States.

It appears from the record that Ard went upon the land in controversy, and also the north half of the northeast quarter of section 11, township 26, range 20, the last of June, 1866. He broke two acres of prairie and three hedge-rows on the land; he went to the United States land office at Humboldt, in this state, on the 14th day of July, 1866, to make a homestead application, and tendered the fees therefor to the register; at that time he was a single person over forty-two years of age, a citizen of the United States, and had never had the benefit of the homestead or preëmption laws. Watson

Stewart, the register, informed him that the land was situated within the granted limits of the Leavenworth, Lawrence & Galveston Railroad, and that he could only homestead eighty acres. The register also advised him that he could make a preëmption filing on eighty acres of the land and build a house thereon, and then prove up, and pay for it at $2.50 per acre; that afterward he could homestead eighty acres more, and by that plan obtain one hundred and sixty acres. As the register would not allow Ard to homestead one hundred and sixty acres, he made a preëmption filing on the eighty acres in dispute. In the fall of 1866 he rebroke two acres of the land, hauled rails in the winter of 1867, and in the spring of that year built a rail pen on the land; up to that time he had no house on the land, but lived a half-mile west, sleeping upon it once in a while by a pile of rails. About the 1st of July, 1867, he went to the local land office for the purpose of changing his preëmption filing into a homestead. The register, N. S. Goss, told him he could not make the change, as all of the land had been withdrawn for the railroad, and that if he should change his preëmption filing the land would revert to the railroad; he then asked the register if he could pay for the land under the preëmption law; the register said to him he could preëmpt if he had a house on the land within six months from the time of making his filing, and was living on the land. He informed the register that it was about eight months before he had erected a house on the land; and the register replied, "he could not prove up and pay for the land, as he had not complied with the law." He applied to the local land office to make proof and payment, on August 9, 1872.

A hearing was ordered by the local officers and the case set for the 9th of September, 1872, and when it was heard both he and the railroad company appeared. The application of Ard was rejected by the local land officers and the U. S. land commissioner. He appealed to the secretary of the interior. The secretary on November 5, 1878, affirmed the decision of the commissioner of the land office.

It is admitted that said section 2 was selected by the Mis-

souri, Kansas & Texas Railroad Company as indemnity land on April 14, 1873; that it was patented to the Missouri, Kansas & Texas Railroad Company on the 3d day of November, 1873; that the land is over twelve miles from the Missouri, Kansas & Texas and the Leavenworth, Lawrence & Galveston railroads; that it was patented to the Missouri, Kansas & Texas Railroad Company on the 3d day of November, 1873; that the railroad company filed a map for a definite location of its road on December 6, 1866; that the land is covered by the letters of withdrawal of the United States land commissioner of March 19, 1867, and April 30, 1867, marked B and C in case of *Neer v. Williams*, 27 Kas. 58, 59. The patent issued to the railroad company and under which Pratt claims, must be regarded as valid and sufficient to convey the land, unless the facts of this case clearly show that the defendant is entitled to the particular tract in dispute under the laws of the United States. (*Railroad Company v. Attorney General*, 118 U. S. 82; *Brewster v. Railroad Co.*, 25 Fed. Rep. 243; *United States v. Railroad Co.*, 37 id. 68; *Burnham v. Starkey*, 41 Kas. 604.)

To overcome the title conveyed by the patent, Ard must have shown that the land was not only subject to preëmption or homestead, but that he had fully complied with all the requirements of either the homestead or the preëmption law. Upon the hearing or contest over the land had before the local officers, on September 9, 1872, the decision upon the facts of the case was against Ard. It was then determined that he had not complied with the provisions of the preëmption law. The United States land commissioner, under the date of November 19, 1877, after an examination of the evidence transmitted to him by the local land officers, wrote them as follows:

2. Facts, stated —duty of preëmptor.

"It does not appear just when Ard first had a dwelling-house, or took up his actual residence on the land. It is clear, however, that he did not, within the time prescribed by the preëmption law, make proof and payment, nor does it appear that he attempted to do so. I am of opinion that from his

own admissions, Ard did not, at the date the right of the road attached, have such a valid subsisting claim as would have been capable of being perfected into complete title, or would have excepted the land from the grant to the company. Ard's application to make proof and payment is therefore rejected, and the title of the company, under its patent, will not be disturbed."

The general rule is that the decision of the United States land officers upon controverted questions of fact in the absence of fraud, imposition, or mistake, is conclusive. (*Johnson v. Towsley,* 13 Wall. 86; *Shepley v. Cowan,* 91 U. S. 330.) If those officers misconstrue or misinterpret the law, their decision is subject to review and reversal, as the courts in such cases give relief.

<div style="margin-left:2em; font-size:smaller">1. Pre-emption —contested case—appeal.</div>

It is unnecessary, upon the question of preëmption, to determine whether the withdrawals of the land on March 19, 1867, and April 30, 1867, by the department of the interior, were valid or not. Upon the failure of Ard to comply with the preëmption law, his right under his preëmption filing ceased, and so far as his preëmption was concerned, the land reverted to the United States, or to the railroad company. Afterward, the United States conveyed its title to the railroad company, and the company to Pratt. Therefore, Ard has not shown upon the facts that he is entitled in law or in equity to the tract in dispute by reason of his preëmption filing.

It was said in *United States v. Railway Co.*, supra, by BREWER, J.:

"The observations of the supreme court admonish me that a patent once issued from the general government is not lightly to be disturbed, and that the perfect title supposed to be conveyed thereby must always be upheld unless it be manifest that there has been in its issue a clear departure from the authority granted. If this be true in respect to a recent patent, much more is it true in reference to a patent so old as this."

We next come to Ard's claim under the homestead law. When he made his preëmption filing on the 14th of July, 1866, he accepted the advice of the register of the land office and utterly abandoned his intention of homesteading. If the

withdrawals of the land from private entry in 1867 were sufficient to defeat a settlement for the purpose of a homestead, while the order was in force, even if improperly issued, then Ard obtained nothing under his homestead claim, because he abandoned that claim on the 14th of July, 1866. ( *Wolsey v. Chapman,* 101 U. S. 755.) If the withdrawals of the land in 1867 were without authority of law and not sufficient to defeat a homestead settlement, yet Ard can make no claim

3. Pre-emption —filing, canceled—adverse claimant.

under the homestead law, because it was too late to initiate any homestead right after his preëmption filing had failed. The land had been then legally selected by the railroad company. An adverse claimant had intervened and obtained rights.

In whatever view we may consider the case, it does not appear that Ard so complied with either the preëmption or homestead law as to obtain any legal or equitable claim to the land conveyed by the patent. It is urged that as the officers of the local land office, in their conversations with Ard, gave him advice upon which he acted, he has rights and equities which are paramount to the patent title. Patents from the United States ought not to be brushed easily away upon oral conversations between claimants and the United States land officers. "Parties place faith, and should place faith, in the action of the government and rely upon the title which its patent conveys." ( *United States v. Railroad Co.,* supra.) The local land officers had no authority or power to dispose of the land otherwise than in accordance with the laws of the United States and regulations of the general land office. If Ard accepted voluntarily the advice given, he cannot complain; if he did not wish to accept the rulings of the local land officers, he should have appealed from any objectionable order. ( *Burnham v. Starkey,* supra.)

Finally, it is requested that if there is any doubt as to Ard's equitable title to the land, this case be continued to await the decision of the supreme court of the United States in the case of the *United States v. Railway Co.,* involving the validity of the patent. That case antedates this. The final

decision in this case does not rest with us.    This case is simply passing through this court on its way to the supreme court of the United States.    We do not think that the final decision by the supreme court of the United States should be delayed by the refusal of this court to pass upon the law questions presented.    The land troubles in Allen county are of so serious a nature that all legal questions involved in this and similar cases should be finally disposed of as speedily as possible.

In our opinion, Pratt has the legal title and is entitled to possession of the land under the acts of congress referred to in the letters of withdrawals and the patent of November 3, 1873.    It is also our opinion that Ard has not brought himself within any provisions of the acts of congress relating to the public lands, so as to hold possession or to give him any legal or equitable title to the land as a homesteader or preëmptor.

The judgment of the district court will be affirmed.

All the Justices concurring.