## BALLARD v. BURROWS.

1. **Conveyance. WARRANTY : BREACH OF.** E. purchased of the school-fund commissioner a half section of land, of which he sold a part to B. and twenty acres to M. He afterward assigned the contract of purchase to B. for his own benefit, and that of M. and other purchasers After M. and his grantee, S. had been in open and adverse possession of the twenty acres for more than ten years, the defendant, by an action in the federal court, had his title quieted to the land, which, including the twenty acres, he conveyed with covenants of warranty to B.· *Held*, that the title of S. was not affected by the decree in the federal court, he not being a party to the action, and that B. could maintain an action for breach of the covenant of warranty.

*Appeal from Hamilton District Court.*

SATURDAY, APRIL 26.

On the 13th day of November, 1874, the defendant conveyed to the plaintiff certain real estate situated in Hamilton county. The conveyance was by deed, with covenants of general warranty.

This action was brought for an alleged breach of the covenants in the deed, the plaintiff claiming that defendant did not have title to twenty acres of the land.

There was an answer and amended answer, admitting the execution of the deed, and setting up facts which it was claimed were a complete defense to the action. These and other facts appear in the opinion. There was a trial by the court, and a judgment was rendered for the plaintiff. Defendant appeals.

*Nourse, Kauffman & Co.*, for appellant.

*Chase & Covil*, for appellee.

ROTHROCK, J.—The record shows that the land conveyed

by the defendant to the plaintiff was claimed by defendant under title derived from the State of Iowa, as part of the Des Moines River Grant. In January, 1869, Burrows, the defendant, commenced an action in the United States Circuit Court for the district of Iowa against the plaintiff, Ballard, to quiet his (Burrows') title, and to obtain possession of the land. There were two eighty-acre tracts involved in that action.

1 CONVEY- ANCE: warranty: breach of.

On the 10th day of January, 1854, one John Everhart made a contract with the school-fund commissioner of Webster county to purchase three hundred and twenty acres of land for four hundred dollars, and paid one hundred dollars in cash; the remainder to be paid within ten years, with interest payable annually at ten per cent.

In 1857 John Everhart made an assignment of his interest in one hundred and twenty acres of the land to the plaintiff Ballard. He also assigned eighty acres to one William Hook. The twenty acres in controversy was then in the possession of one McHone  Everhart made an assignment on the back of his contract with the school-fund commissioner in these words:

"For value received I assign all my right, title, claim and interest of the within half-section to John D. Ballard, as witness my hand and seal this 1st day of August, 1857.

"JOHN EVERHART."

On the 20th day of October, 1857, the plaintiff, Ballard, executed to said McHone a bond in writing, in the penal sum of one hundred and fifty dollars, conditioned to convey to said McHone, by a deed of general warranty, the twenty acres of land in controversy, the deed to be made on or before the 1st day of January, 1858, "or as soon as it could be cleared out of the office."

This contract has an indorsement on it as follows:

"I do hereby certify that I am to clear the above land out of the office by paying what is due to the school-fund commission.                                JOHN EVERHART."

Ballard v. Burrows.

On the same day McHone assigned his contract to said Stewart.

In the action in the United States Circuit Court Ballard set up and pleaded that the land was granted to the State of Iowa for the purposes of education, and that he purchased the same as school land. He did not disclaim title nor possession to the twenty acres in controversy, although he was not then and never had been in possession, and, as will presently be seen, never had nor made any claim to be the owner thereof. There was a decree in the said Circuit Court quieting Burrows' title to the land, including the twenty acres in controversy. After this decree Ballard purchased the land, including the twenty acres, from Burrows and this action is founded upon an alleged breach of the covenants in the deed of Burrows.

The learned judge who tried the cause in the court below made special findings in writing, which are as follows:

"1. John Everhart purchased of John Tolman, school-fund commissioner of Webster county, the south half of section No. 31, in township No. 87 north, of range No. 26 west of the 5th P. M., Iowa, as inuring to the State under the five hundred thousand acre grant, and took a contract therefor January 10, 1854; that after the said purchase the said John Everhart took possession of said lands, and from time to time sold parts thereof; and that previous to the 20th day of October, A. D. 1857, he had sold to one James McHone this twenty-acre tract in question, commencing at the south-east corner of section No. 31 aforesaid, thence running north twenty rods; thence west one hundred and sixty rods; thence south twenty rods; thence east one hundred and sixty rods to the place of beginning, and received his pay in full therefor, and the said McHone was then occupying the same and had it under cultivation.

"2. That the plaintiff, John D. Ballard, purchased of the said John Everhart the south half of the south-east quarter and the south half of the south-west quarter of section 31

aforesaid (except the twenty-acre tract conveyed to McHone), on the 20th day of October, A. D. 1857, and the said Everhart then, having sold all of said half section purchased by him, assigned to said Ballard the school-fund contract, in trust for his own benefit, and the benefit of McHone and others who had purchased the land.

"3.    That on the said 20th day of October, A. D. 1857, in order to secure the performance of said trust by the said Ballard, the said Everhart required said Ballard to execute bond conditional for the conveyance of said twenty-acre tract to said McHone after it was paid out by said Everhart and patented to said Ballard, and the bond mentioned in the pleadings was executed for that purpose.

"4.    That said McHone sold and conveyed said twenty-acre tract to one Stewart sometime in the year 1858, and he has been in the actual occupation and possession of said land from the time of his purchase up to the present time, and now is.

"5.    That the said John D. Ballard purchased of the defendant, R S. Burrows, the south half of the south-east quarter, and the south half of the south-west quarter of section No. 31, in township No. 87 north, of range No. 26 west of the fifth P. M., and received a deed of general warranty therefor from said defendant and his wife, bearing date November 13, 1874; that said tract of land so purchased contained one hundred and fifty-one and sixty-two one-hundredths acres, and the price paid was twelve dollars per acre, amounting in the aggregate to one thousand eight hundred and nineteen dollars and forty-four cents.

"6.    That at the time of said sale and conveyance the said Burrows had no title to said twenty-acre tract of land occupied by said Stewart; that at that time said tract was held and owned by said Stewart, and that he had been in the actual, open and notorious occupation and possession of said tract under color of title and claim of right adverse to said Burrows since his purchase in 1858."

It is, perhaps, proper to state further that after the decree in the Federal Court Ballard filed a petition in said court under the occupying claimant law, which petition was dismissed after he purchased the land of Burrows.

That the findings of fact by the court below are sustained by the evidence does not seem to be seriously controverted. The objection is made, however, that there are certain conclusions of law incorporated in the findings which are not warranted by the facts found.

It is not denied that at the time of the commencement of this action Stewart had been in the actual, open and notorious possession of the twenty acres in controversy for more than ten years under the contract with the school-fund commissioner.

That this would be a bar to an original action by Burrows against him cannot be disputed. It is urged, however, that Ballard is estopped from pleading a failure of title because, in the action in the federal court, he claimed to be the owner of the twenty acres in controversy, and this claim was adjudged against him.

This position is not tenable. Stewart was not a party to that action, and his rights could not be prejudiced by the decree. When Burrows covenanted in 1874 that he had good title, he did not have good title to this twenty acres, because Stewart had then been in adverse possession under claim of right more than ten years after the United States had parted with the title.

By the decree it was adjudged that the title of Burrows was superior to that of Ballard, and this was all. It is incumbent upon Burrows, under his covenants of general warranty, to protect Ballard against the claims of all other persons.

But it is claimed that because the contract which Everhart held with the school-fund commissioner was assigned to Ballard, and Ballard entered into a contract to convey the lands, with covenants of warranty, that Stewart's possession was

under Ballard, and that Ballard is, therefore, concluded by the decree in the federal court.

We do not understand, however, from the evidence and findings of fact, that Stewart was in possession under Ballard. It is true Ballard took the assignment of the contract, and made what appears to be a personal obligation to convey to McHone, Stewart's assignor. But all the evidence shows that the assignment was without any beneficial interest in Ballard. McHone had paid Everhart for the land, and Everhart bound himself to pay the balance due to the school fund, and Ballard was the mere trustee through whom the title was to pass from the State to McHone, or his assignee. This is apparent from the bond itself. It recites that Ballard was to convey on or before the 1st day of January, 1859, or as soon after as it can be "cleared out of office." It further appears that Everhart was "to clear it out of the office" by paying what was to be paid to the school-fund commissioner. Ballard's obligation to convey depended upon Everhart's making payment for the land.

Now we are aware of no rule which, under these circumstances, prevents Ballard from claiming that Stewart had title when Burrows made his conveyance. McHone was not a purchaser from Ballard, as all the parties well understood. Ballard undertook the performance of a mere naked trust, which was to transmit the title from the State to McHone or his assignee. When Ballard put in his defense in the federal court it was for himself alone, and not for Stewart. Burrows was bound to take notice of the possession by Stewart of the twenty acres in controversy. He chose, however, to disregard Stewart's possession, and commenced his action claiming Ballard as the possessor of the land. Now we do not think that because Ballard did not disclaim possession, that he is estopped from claiming that Burrows had no title when he conveyed, and that the title was in Stewart by reason of what the law presumed. Burrows knew that Stewart was holding adverse possession.

Ballard v. Burrows.

It appears that Ballard and one Hook, who was the owner of part of the land, recovered from the State the amount which was paid on the school-fund commissioner's contract for the whole half section, and that in making the claim Ballard did not except the twenty acres in controversy. It is urged that Ballard is by this act concluded as to the failure of the title to the twenty acres.

We find nothing in the evidence tending to show that Burrows was in any way misled to his prejudice by this conduct of the plaintiff. The amount was so inconsiderable that it is not sufficient to show bad faith in the plaintiff. It may well have been the result of mere mistake or oversight.

In conclusion, we may say that we are largely influenced in affirming the judgment in this case by these considerations, namely:

It appears without conflict in the evidence that after the decree in the federal court, and while the petition under the occupying claimant law was pending, the plaintiff distinctly informed the agent of defendant, who afterward made the contract of sale to the plaintiff, that he (plaintiff) did not claim for improvements on this twenty acres, and that if this did not appear in the petition that he would amend.

It further appears that this agent went upon the land to examine the improvements, and that plaintiff then informed him of Stewart's claim to the twenty acres. After this notice defendant sold the land to the plaintiff and executed the warranty deed.

It appears to us, under these circumstances, that he is not in a position to claim that the plaintiff is estopped, at least by acts not of record.

AFFIRMED.